**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NEW YORK STATE TEAMSTERS CONFERENCE
PENSION & RETIREMENT FUND, by its Trustees, John A.
Bulgaro, Michael S. Scalzo, Sr., Brian K. Hammond, George          5:25-cv-421 (BKS/MJK)
E. Harrigan, Chris Langan, Daniel W. Schmidt, Mark D. May
and Rusty Staab,

                                    Plaintiffs,

v.

ESCRO TRANSPORT LTD, and any and all members of its
controlled group,

                                    Defendants.

**Appearance:**

*For Plaintiffs:*
Gerald Green
Vincent M. DeBella
Paravati, Karl, Green & DeBella, LLP
520 Seneca Street, Suite 105
Utica, New York 13502

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.    **INTRODUCTION**

Plaintiffs New York State Teamsters Conference Pension & Retirement Fund, by John A.

Bulgaro, Michael S. Scalzo, Sr., Brian K. Hammond, George E. Harrigan, Chris Langan, Daniel

W. Schmidt, Mark D. May, and Rusty Staab, as trustees and fiduciaries, (the "Pension Fund"),

filed this action against Defendant Escro Transport Ltd., and any and all members of its

controlled group, alleging that Defendants violated the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 1). Defendants have not answered

1

the Complaint and have not otherwise appeared in this action. Presently before the Court is Plaintiffs' motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 15).

Plaintiff's claim arises under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C.§ 1381, et seq. (*See* Dkt. No. 1, ¶ 11). Plaintiffs allege that Defendant Escro was a party to a collective bargaining agreement that required it to make contributions to the Pension Fund's employee benefit and multi-employer pension plan (the "Plan"). (*Id.* ¶¶ 7, 23). According to the Complaint, Escro has "permanently ceased all covered operations under the Plan and/or permanently ceased to have an obligation to contribute to the Plan[,]" and the Pension Fund, as the plan sponsor, has therefore assessed Escro a withdrawal liability. (*Id.* ¶¶ 25-26 (citing 29 U.S.C. §§ 1382, 1399(b)(1) and (c)(3))). Plaintiffs allege that Escro has subsequently failed to "request a review, timely demand arbitration, or remit timely payment of" its assessed withdrawal liability, and is therefore in default within the meaning of 29 U.S.C. §§ 1399(c)(2) and (5). (*Id.* ¶¶ 32-33). Plaintiffs further allege that "the withdrawal liability is now accelerated and due and owing to the Pension Fund in the sum of $892,034.74, together with interest, an additional award of the greater of interest or liquidated damages, costs and reasonable attorneys' fees as provided in the Plan's rules and as provided in 29 U.S.C. §§ 1399(c)(2), (c)(5), 1132(g)(2), 1401(b)(1) and 1451(b)." (Dkt. No. 1, ¶ 33). For the reasons that follow, Plaintiffs' motion for default judgment is granted as to liability and damages against Defendant Escro but not as to a controlled group.

## II.    DISCUSSION

### A.    Standard of Review and Clerk's Entry of Default

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1 (requirements for a clerk's certificate of entry of default). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b). In support of its motion, Plaintiff has submitted a memorandum of law, affidavit of counsel with supporting exhibits and a proposed order and judgment. (Dkt. No. 15).

On May 28, 2025, Plaintiffs served Defendant Escro with the summons and Complaint. (Dkt. No. 15-3). On July 2, 2025, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendants' failure to answer or otherwise appear in this action. (Dkt. No. 10). Plaintiffs' request was accompanied by an affidavit, then required by Local Rule 55.1, showing that: Defendants are not infants, in the military, or incompetent persons; Defendants failed to appear in this action; and Plaintiffs properly served the summons and Complaint. (Dkt. No. 10-1). On July 3, 2025, Plaintiffs received a clerk's entry of default against Defendant Escro. (Dkt. No. 11). On August 13, 2025, Plaintiffs filed the instant motion for default judgment under Rule 55(b). (Dkt. No. 15). Although Plaintiffs served the motion on Defendant Escro, (*see* Dkt. No. 16), Escro has filed no response. Therefore, Plaintiffs have met the procedural requirements for an order of default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b) as to Defendant Escro.

### B.    Liability of Escro

3

By failing to appear in this action or oppose this motion, Defendant Escro is deemed to have admitted the factual allegations in the Complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

### 1. MPPAA and Withdrawal Liability

"In a multiemployer pension plan, participating employers make regular contributions into a common fund that is regulated by ERISA." *See Mar-Can Transportation Co., Inc. v. Loc. 854 Pension Fund*, 167 F.4th 581, 584 (2d Cir. 2026) (citing 29 U.S.C. §§ 1002(37), 1301(a)(3)). "Each employer's collective bargaining agreement with its workers' union designates the plan to which the employer will contribute and sets out the terms of those contributions." *Id.* (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 605 (1993)). "The consolidated funds are available to pay benefits owed to employees of any participating employer." *Id.* at 585.

4

"One of the MPPAA's key reforms was that it obligated a company withdrawing from a multiemployer plan to pay 'withdrawal liability.'" *Id.* at 586 (citing 29 U.S.C. § 1381). "The term 'withdrawal liability' refers to 'an employer's obligation . . . to fund the old plan to the extent that that plan remains responsible [for providing benefits to the withdrawing employer's] employees upon their retirement." *Id.* (quoting *T.I.M.E.-DC, Inc. v. Mgmt.-Lab. Welfare & Pension Funds, of Loc. 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 946 (2d Cir. 1985)). The Second Circuit has explained withdrawal liability and "complete withdrawal" as follows:

> Withdrawal liability is calculated based on the MPPAA, and generally represents the portion of a multiemployer pension fund's "unfunded vested benefits" allocable to the withdrawing employer. A "complete withdrawal," which can trigger liability under the statute, occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan," for example by going out of business, or renegotiating the terms of its CBA. When this occurs, "the entity maintaining the plan[ ] must determine the amount of the employer's withdrawal liability, notify the employer of the amount[,] and make a demand for payment."

*C&S Wholesale Grocers, Inc.*, 24 F.4th at 170–71 (first quoting 29 U.S.C. § 1381(b)(1); then 29 U.S.C. § 1383(a); and then quoting *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988)).

"The initial notification to the employer must occur 'as soon as practicable after an employer's complete or partial withdrawal.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 607 (E.D.N.Y. 2017) (quoting 29 U.S.C. § 1399(b)(1)), *report-recommendation adopted*, 270 F. Supp. 3d at 599. "Within 90 days after the employer receives the notification from the plan sponsor, the employer can request that the plan sponsor: (1) 'review any specific matter relating to the determination of the employer's liability and the schedule of payments;' (2) 'identify any inaccuracy in the

determination of the amount of the unfunded vested benefits allocable to the employer;' and (3) 'furnish any additional relevant information to the plan sponsor.'" *Id.* (quoting 29 U.S.C. § 1399(b)(2)(A)). "[N]otwithstanding an employer's request for review of the plan's withdrawal liability determination, '[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand." *Id.* (quoting 29 U.S.C. § 1399(c)(2)); *see also Mar-Can Transportation*, 167 F.4th at 587.

"In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C.A. § 1399(c)(5). A "default" under section 1399 means "(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." *Id.*

"Generally, where a plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 608 (quoting *Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03-cv-4530, 2004 WL 67480, at *2, 2004 U.S. Dist. LEXIS 418, at *7 (S.D.N.Y. Jan. 15, 2004)). "Thus, '[t]he plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule.'" *Id.* at 608–09.

### 2.    Escro's Withdrawal Liability

6

Here, the Complaint alleges that "Escro was party to a collective bargaining agreement which, by its terms, required it to make contributions to the Pension Fund on behalf of its covered employees." (Dkt. No. 1, ¶ 22). Plaintiffs also allege Escro was "party to a participation agreement which further required it to make contributions to the Pension Fund on behalf of its covered employees[,]" and, "[a]s such, Escro had 'an obligation to contribute' to the Pension Fund as that term is defined in 29 U.S.C. § 1392(a)." (*Id.* ¶¶ 23-24). Plaintiffs have submitted copies of the Pension Fund's participation agreements between Escro and Local Union 449. (Dkt. Nos. 15-1, ¶ 11; 15-5). Under the terms of those agreements, participating employers are also bound by "Plan documents and all of the rules and regulations of the Fund now and/or hereafter adopted by the Board of Trustees." (*Id.* at 2, 5; *see also* Dkt. No. 15-11, ¶¶ 3-4).

Plaintiffs allege that, "[o]n or about June 15, 2024, Escro permanently ceased all covered operations under the Plan and/or permanently ceased to have an obligation to contribute to the Plan." (Dkt. No. 1, ¶ 25). Plaintiffs further allege that, "as Plan sponsor," the Pension Fund consequently "determined that Escro had completely withdrawn from the Plan[.]" (Dkt. No. 1, ¶ 26; *see also* Dkt. No. 15-11, ¶ 7 (Affidavit of the Executive Administrator of the Pension Fund) (affirming that Pension Fund Trustees "determined Escro had completely withdrawn from the Pension Fund[,] thereby triggering a complete withdrawal liability")). Plaintiffs allege that they "thereafter determined, and assessed, Escro a withdrawal liability in the sum [of] $892,034.47[.]" (Dkt. No. 1, ¶ 26). According to the Complaint, "[b]y letter dated October 31, 2024, the Pension Fund notified Escro of the assessed withdrawal liability[,] demanded a single lump sum payment of same, or, in the alternative, payment of the assessed withdrawal liability in interim monthly payments in accordance [with] the schedule included with said notice and demand for payment." (Dkt. No. 1, ¶ 27; *see also* Dkt. No. 15-7 (Pension Fund Letter Dated October 31, 2024)).

7

Plaintiffs therefore have satisfied the statutory and procedural requirements for withdrawal liability as to Escro. *See D & A Bus Co.*, 270 F. Supp. 3d at 609 (finding the plaintiff "satisfied the statutory prerequisites set forth in 29 U.S.C. § 1399(b)" entitling it to default judgment as to withdrawal liability upon showing the defendant's complete withdrawal and that the plaintiff determined the amount of withdrawal liability based on an actuarial report, and sent notice, demand, and payment schedule to the employer).

The Pension Fund has also established its entitlement under 29 U.S.C. § 1399(c)(5)(A) to accelerated payment of the total withdrawal liability amount. Plaintiffs allege, despite the October 31, 2024 letter demanding payment, Escro failed to either "remit a lump sum payment of the assessed liability by that due date," or "begin making interim payments when due." (Dkt. No. 1, ¶ 29; *see also* Dkt. No. 15-11, ¶ 12). Plaintiffs allege that in a letter dated January 16, 2025, "the Pension Fund notified Escro of its failure to make payment and advised that if failure to make payment was not cured within sixty (60) days, Escro would be in default under 29 U.S.C. § 1399(c)(5)(A)." (Dkt. No. 1, ¶ 30; 15-8; *see also* Dkt. Nos. 15-11, ¶ 13; 15-8 (Pension Fund Letter Dated January 16, 2025)). Plaintiffs allege Escro failed to "request a review, timely demand arbitration, or remit timely payment of the assessed withdrawal liability." (Dkt. No. 1, ¶ 33; *see also* Dkt. No. 15-11, ¶ 14). Therefore, Plaintiffs are entitled to the total unpaid withdrawal liability plus accrued interest. *See D & A Bus Co.*, 270 F. Supp. 3d at 610 (finding the plaintiff had established its entitlement to full amount of withdrawal liability plus interest where alleged that it sent the employer the requisite notice and that the employer failed to pay).

### C.    Liability of Members of Escro's Controlled Group

Plaintiffs also bring this action against "any and all members of [Escro's] controlled group." (Dkt. Nos. 1; 15-13, at 8, 17-18). "To ensure the viability of multiemployer pension

plans against the failure of a contributing employer, the MPPAA has broad provisions that disregard the usual legal barriers between affiliated, but legally distinct, businesses." *UFCW Loc. One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 371 (2d Cir. 2015). "All 'trades or businesses' under 'common control' are treated as a single employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another." *Id.* (citing 29 U.S.C. § 1301(b)(1); *Corbett v. MacDonald Moving Servs., Inc.,* 124 F.3d 82, 86 (2d Cir. 1997)). "[U]nder a 'common control' theory, [a p]laintiff must set forth facts illustrating that [the defendant entities] are members of a 'parent-subsidiary' or 'brother-sister' group of trades or businesses under common control." *D & A Bus Co.*, 270 F. Supp. 3d at 610 (quoting *I.L.G.W.U. Nat'l. Ret. Fund v. ESI Grp., Inc.*, No. 92-cv-0597, 2002 WL 999303, at *5, 2002 U.S. Dist. LEXIS 8614, at *16 (S.D.N.Y. May 15, 2002) (internal quotations omitted)).

Here, Plaintiffs have not alleged any facts regarding any controlled group. (*See* Dkt. No. 1). *Cf. UNITE HERE Ret. Fund v. Edward Vill. Grp., LLC*, No. 21-cv-2141, 2021 WL 5414972, at *5, 2021 U.S. Dist. LEXIS 220361, at *15 (S.D.N.Y. Nov. 16, 2021) (declining to enter default judgment against an entity because there were no facts alleged "regarding Defendant's ownership that would establish that [the two entities at issue] belong to a 'control group' under the applicable statutes, nor have [plaintiffs] pointed to any information incorporated into the Complaint that supports the conclusory allegations"). Moreover, Plaintiffs only received a certificate of default as to Defendant Escro. (Dkt. No. 11). Accordingly, to the extent Plaintiffs seek a default judgment against any unidentified members of Escro's "controlled group," such request is denied. *See id.; see also Unite Here Ret. Fund v. Angelo of Mulberry St. Inc.*, No. 21-cv-583, 2022 WL 902892, at *2, 2022 U.S. Dist. LEXIS 56083, at *5 (S.D.N.Y. Mar. 28, 2022) (denying request for default judgment as to "any John Doe Defendants" where plaintiffs did not

9

allege facts supporting a control group claim); *D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 611 (E.D.N.Y. 2017) (denying request for default judgment against alleged member of controlled group based on conclusory allegations) (collecting cases).

### D. Damages

Having established that Plaintiffs are entitled to a finding of liability with respect to their withdrawal liability claim against Escro, the Court considers the documentary evidence Plaintiffs have submitted in support of their request for damages. "In determining the categories of damages to which Plaintiff is entitled, the Court points out that any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of [29 U.S.C. § 1145])." *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 614 (E.D.N.Y. 2017) (internal quotations and citation omitted).

### 1. Withdrawal Liability

Where the damages sought "consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to adopt [ ] the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." *D & A Bus Co.*, 270 F. Supp. 3d at 613 (internal quotations and citation omitted) (collecting cases); *see also Pavers & Rd. Builders Dist. Council Pension Fund by Montelle v. Nico Asphalt Paving, Inc.*, 248 F. Supp. 3d 374, 378 (E.D.N.Y. 2017) ("If arbitration is not commenced within the statutory timeframe, the plan's determination of the employer's withdrawal liability becomes final and must be paid in accordance with the schedule set forth in the initial notice." (citing 29 U.S.C. § 1401(b)(1))).

Plaintiffs seek $892,034.47 in withdrawal liability. (Dkt. Nos. 15-7; 15-11, ¶¶ 8-9; 15-12, at 1). To calculate Escro's withdrawal liability, the Pension Fund's Executive Administrator

states that he contacted the Plan Actuary, which "prepared the actuarial assumptions used to determine the unfunded vested benefits of the Plan and calculated the withdrawal liability . . . as prescribed in [ ] the Pension Fund's Policies and Procedures." (Dkt. No. 15-11, ¶¶ 8-9).[1] Having reviewed the actuary's letter, and in light of Escro's failure to contest the withdrawal liability determination or appear in this matter, the Court concludes Plaintiffs sufficiently established the amount of withdrawal liability owed in this case. *See Ret. Fund of Loc. 1482 Paint & Allied Prods. Manufacturers v. N. Adhesives, Inc.*, No. 22-cv-5850, 2023 WL 7688689, at *4, 2023 U.S. Dist. LEXIS 106678, at *8 (E.D.N.Y. June 20, 2023) (recommending award of "$6,221,319 in withdrawal liability principal, as calculated by plaintiff's actuary" where the defendant "failed to make the withdrawal liability payments as required by" the plaintiff's notice and demand letters "and did not request arbitration to contest the amount of withdrawal liability owed"), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 119385 (E.D.N.Y. July 11, 2023); *UFCW Loc. One Health Care Fund v. Greene Great Am., Inc.*, No. 23-cv-1441, 2025 WL 1506163, at *4, 2025 U.S. Dist. LEXIS 99628, at *11 (N.D.N.Y. May 27, 2025).

### 2.    Liquidated Damages and Interest

Plaintiffs seek interest at the rate of 11 percent per annum from the due date of the first payment which was not timely made, December 30, 2024, to the date of filing of the motion for default judgment, August 13, 2025. (Dkt. Nos. 15-12, at 1-2; 15-13, at 23). Plaintiffs also seek an additional award of 10 percent liquidated damages on the outstanding withdrawal liability. (Dkt. Nos. 15-12, at 2; 15-13, at 23). Both ERISA, 29 U.S.C. § 1132(g)(2), and the Pension Fund's Policies and Procedures provide for liquidated damages and interest. (*See* Dkt. No. 15-6, at 15

---

[1] Plaintiffs have included the actuarial report in their submissions to the Court, which details the calculations used to determine Escro's withdrawal liability. (*See* Dkt. No. 15-7, at 4-32).

(allowing for interest at the rate of 11 percent[2] and the greater of "interest or ten percent (10%) liquidated damages")); *see also D & A Bus Co.*, 270 F. Supp. at 615–16 (awarding liquidated damages of 20 percent and interest on withdrawal liability); *Greene Great Am.*, 2025 WL 1506163, at *5, 2025 U.S. Dist. LEXIS 99628, at *12-13 (same). Accordingly, Plaintiffs have demonstrated their entitlement to an award of interest on the withdrawal liability in the amount of $60,755.58, and liquidated damages in the amount of $89,203.45.

### 3.      Attorney's Fees and Costs

Plaintiffs seek and are entitled to recover the attorneys' fees and costs they incurred in connection with their efforts to collect Escro's withdrawal liability in this case. ERISA and the applicable provisions of the Pension Fund's Policies and Procedures allow for such an award. *See* 29 U.S.C. § 1132(g)(2)(D) (reasonable attorney's fees and costs of the action); (*see also* Dkt. No. 15-6, at 15 ("The Withdrawn Employer will also be assessed [ ] attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2).")). District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). This approach requires a district court to set "a reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Lilly v. City of New York*, 934 F.3d 222, 229–30 (2d Cir.

---

[2] While the Withdrawal Liability subsection does not specify that interest is calculated per annum, the section of the Policies and Procedures entitled "Policies Concerning Contributions" explains that "the Fund, in its sole discretion, will assess interest on the amount of delinquent contributions at the rate of eleven percent (11%) *per annum* from the Due Date[.]" (Dkt. No. 15-6, at 7).

2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011) (citation and internal quotation marks omitted).

The Supreme Court has explained that district courts should generally use "the prevailing market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *See Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. Syracuse*, 357 F. Supp. 3d 180, 200 (N.D.N.Y. 2019) (citation omitted). A review of cases in this District indicates that a rate of $250–$350 for partners is reasonable. *See Sadowski v. Urbanspotlite LLC*, No. 22-cv-887, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15 (N.D.N.Y. Apr. 7, 2023); *see also Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022).

Additionally, "[o]nce the typical hourly rate is established, the court should 'bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate,'" *Id.* (quoting *Arbor Hill*, 522 F.3d at 190), including:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or

13

> contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Arbor Hill*, 522 F.3d at 186 n.3).

Here, Plaintiffs request $5,180.00 in attorney's fees, representing 14.8 hours of attorney time at a rate of $350 per hour.[3] (Dkt. No. 15-10, at 7; *see also* Dkt. No. 15-1, ¶¶ 28-29). Plaintiffs' attorney, Gerald Green, is a partner at Plaintiffs' counsel's firm and has "been employed by the Firm since 1986[.]" (Dkt. No. 15-1, ¶ 28). Attorney Green has "been litigation counsel to the Pension Fund since in and around that date[,]" and his practice "is primarily in ERISA litigation matters." (*Id.*). Plaintiffs have obtained a finding of liability and award of damages as to their withdrawal liability claim against Escro.[4]

The Court concludes that Attorney Green's hourly rate and the number of hours expended preparing the motion for default judgment are reasonable. *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *Greene Great Am.*, No. 2025 WL 1506163, at *7, 2025 U.S. Dist. LEXIS 99628, at *20. In addition, having reviewed Plaintiffs' request for costs in the amount of $520.00, (Dkt. Nos. 15-1, ¶ 28; 15-12; 15-13, at 25), and having found it reasonable, the Court grants Plaintiffs' request. Accordingly, the Court awards $5,180.00 in attorney's fees and $520.00 in costs.

---

[3] Attorney Green affirms that his customary hourly rate is $500.00, but he has "caused a computation of charges for [his] legal services under the Lodestar method using the $350 hourly rate[.]" (Dkt. No. 15-1, ¶ 29).

[4] While Plaintiffs have failed to obtain a finding of liability as to members of Escro's controlled group, this does not warrant a reduction in fees; the relief sought in connection with the withdrawal liability claim against Defendant Escro, which was successful, was identical to the relief sought against the members of its alleged controlled group. *See Finkel v. Zizza & Assocs. Corp.*, No. 12-cv-4108, 2023 WL 8455937, at *11, 2023 U.S. Dist. LEXIS 217242, at *36 (E.D.N.Y. Dec. 6, 2023) ("Prevailing on the alter ego claim provides a total recovery for [the p]laintiff since all its claims sought identical relief—i.e., to hold the Moving Defendants liable for the withdrawal liability. As such, failure to prevail on the evade-or-avoid, or controlled group claims does not warrant a reduction in fees.").

### 4.    Pre- and Post-Judgment Interest

Plaintiffs seek pre-judgment interest at the rate of 11 percent per annum from August 13, 2025 through the date of Judgment, at the rate of $268.83 per diem. (Dkt. Nos. 15-12, at 2; 15-13, at 27). "Interest on withdrawal liability runs from the initial date the withdrawal liability was due[,]". *See Finkel*, 2023 WL 8455937, at *13, 2023 U.S. Dist. LEXIS 217242, at *43 (citing *Ferrara v. Heavy Constr. Lumber, Inc.*, No. 21-cv-2562, 2022 WL 1085380, at *5, 2022 U.S. Dist. LEXIS 2392, at *11-12 (E.D.N.Y. Jan. 5, 2022)), and continues until judgment is entered, *see Bd. of Trs. of the UFCW Loc. 50 Pension Fund v. Baker Hill Packing Inc.*, No. 13-cv-1888, 2015 WL 867013, at *11, 2015 U.S. Dist. LEXIS 24183, at *25 (E.D.N.Y. Jan. 29, 2015) ("[S]ince [the d]efendant's withdrawal liability remains delinquent, daily interest continues to accrue until judgment is entered."), *report recommendation adopted*, 2015 WL 867013, at *1, 2015 U.S. Dist. LEXIS 23998 (E.D.N.Y. Feb. 27, 2015). Thus, the Court awards continuing interest from August 13, 2025 to the date of Judgment at a per diem rate of $268.83, in accordance with the parties' contractually agreed upon rate. *See id.*; *see also Ferrara*, , 2022 WL 1085380, at *5, 2022 U.S. Dist. LEXIS 2392, at *11-12. Plaintiffs are also entitled to post-judgment interest as a matter of right at the statutory rate prescribed by 28 U.S.C. § 1961(a). *See Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008).

## III.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 15) is **GRANTED** as to liability and damages with respect to their withdrawal liability claim against Defendant Escro, but is **DENIED** as to Plaintiffs' claim against Defendant Escro's "controlled group"; and it is further

**ORDERED** that Plaintiffs are entitled to an award of damages as follows: withdrawal liability in the amount of $892,034.47; liquidated damages in the amount of $89,203.45; interest at the rate of 11 percent per annum from December 30, 2024 through August 13, 2025, in the amount of $60,755.58; attorney's fees in the amount of $5,180.00; costs in the amount of $520.00; and continuing interest at the rate of $268.83 per diem to the date of judgment; and it is further

**ORDERED** that Plaintiffs are awarded post-judgment interest on all money awards at the rate provided for by 28 U.S.C. § 1961(a); and it is further

**ORDERED** that Plaintiffs file, by April 3, 2026, a letter indicating if they wish to proceed as to a withdrawal liability claim against Defendant Escro's "controlled group," and if so how they seek to proceed; and it is further

**ORDERED** that, once the disposition of any claim against the "controlled group" is determined, the Court will enter judgment in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendant Escro and file a certificate of service within 14 days of the date of this Decision.

**IT IS SO ORDERED.**

Dated: <u>March 20, 2026</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge